UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

-FILED-
JUL 28 2026
At ______ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

TREVOR RAY VAUGHN,
Plaintiff,
)
v. ) Civil Action No. 1:26CV349
)
BLOCK, INC. d/b/a CASH APP,
Defendant.
)

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## INTRODUCTION

1. This is a consumer protection action arising from Block, Inc.'s wrongful and continued freezing of Plaintiff Trevor Ray Vaughn's personal consumer funds — $2,045.54 — for over 1,496 days, since June 18, 2022.

2. Defendant Cash App claims it is "obligated by law" to maintain this freeze based on a third-party UCC-1 financing statement filed by Fundo LLC. That claim is false. The evidence proves the freeze was baseless from inception and has been maintained through a systematic campaign of fraudulent concealment designed to prevent Plaintiff from discovering his legal rights and seeking redress.

## PARTIES

3. Plaintiff Trevor Ray Vaughn is an individual residing at 3012 Kenwood Ave, Fort Wayne, Indiana 46805, Allen County, Indiana. He is a consumer who opened a personal Cash App account for personal use.

4. Defendant Block, Inc. is a Delaware corporation with its principal place of business at 1955 Broadway, Suite 600, Oakland, California 94612. Block, Inc. does business as Cash App, a money transmitter licensed in Indiana.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. (Regulation E).

6. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen of Indiana and Defendant is a citizen of Delaware with its principal place of business in California, and the amount in controversy exceeds $75,000.

7. Venue is proper in the Northern District of Indiana, Fort Wayne Division, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Allen County, Indiana, where Plaintiff resides, where his account was held, and where the harm was suffered.

## FACTUAL BACKGROUND

### The Account and the Freeze

8. Plaintiff opened a personal Cash App account in or before 2022 and used it for personal transactions.

9. On or about June 18, 2022, without prior notice, explanation, or court order, Cash App froze Plaintiff's account, withholding $2,045.54 in personal consumer funds.

10. Cash App informed Plaintiff that the freeze was based on a UCC-1 financing statement filed by Fundo LLC, a merchant cash advance lender, with File Number 202205022928271.

**The UCC-1 Has No Freeze Authority**

11. A UCC-1 financing statement is a public notice of a security interest in collateral. It is NOT a court order, NOT a judgment, and does NOT grant the secured party any authority to freeze, seize, or access funds in a personal consumer bank account.

12. Fundo LLC itself admitted this fact in a formal Better Business Bureau Business Response dated March 30, 2026, stating: "A UCC-1 filing is not a court order, does not constitute a judgment, and does not grant Fundo LLC the ability to access, freeze, or withdraw funds from any personal or business bank account."

13. Fundo LLC's own website lists Cash App as a "non-eligible bank" that Fundo LLC does not work with. Fundo LLC never authorized Cash App to enforce the UCC-1.

**The Entity Mismatch**

14. The UCC-1 was filed in May 2022 against Plaintiff's sole proprietorship / DBA. Plaintiff's LLC, Better Than Affordable L.L.C., was not formed until February 25, 2023 — eight months AFTER the freeze began.

15. Cash App froze a PERSONAL CONSUMER ACCOUNT, not a business account. The UCC-1 named Fundo LLC as the secured party and Plaintiff's DBA as the debtor. It did not name Plaintiff's LLC because the LLC did not exist when the UCC-1 was filed.

16. There is no legal theory under Indiana or federal law by which a UCC-1 filed against a non-existent LLC can justify freezing a personal consumer account held by an individual.

**The "Secured Party" Concealment Scheme**

17. Over a 17-month period, Cash App sent Plaintiff at least 9 emails deliberately mislabeling him as a "secured party" — the legal opposite of his actual status as "debtor."

18. Under the Uniform Commercial Code, a "secured party" is the lender or creditor who holds a security interest. A "debtor" is the person who owes the debt. Cash App reversed these roles.

19. Cash App's mislabeling was intentional and institutional, not a clerical error. The evidence proves this:

a. Five (5) distinct Salesforce users enforced the same mislabel, including X-SFDC-User IDs: 005Ke000001WSy3, 0055w00000GSf5H, 005Pn0000098b8U, 0055w00000DS53w, and 005Pn00000HNxgj.

b. The email template was deliberately revised between October 2024 and February 2025 to embed the "secured party" language.

c. The July 20, 2026 and June 11, 2026 Block Civil Process emails are cryptographically authenticated (DKIM/SPF/DMARC pass), proving they are authentic and unaltered.

20. The purpose of the "secured party" mislabel was to make Plaintiff invisible to regulatory and legal recovery mechanisms. CFPB redress systems, class action databases, and consumer escalation queues search for "debtor," "consumer with frozen account," and "borrower." By labeling Plaintiff "secured party," Cash App ensured he would be excluded from every recovery opportunity.

21. Plaintiff was excluded from the CFPB's $175 million redress program (Consent Order 2025-CFPB-0001) and the $45 million state attorney general settlement (July 9, 2026) because he was misclassified as a creditor rather than a consumer.

**The "Do Not Reply" Trap**

22. Cash App support agents repeatedly commanded Plaintiff not to reply to email threads — then closed his cases for "non-responsiveness."

23. For example, agent Christopher O. (X-SFDC-User 005Pn0000098b8U) on May 18, 2026 commanded "don't reply," and on May 25, 2026, Case #215686139 was auto-closed for "non-responsiveness" — the same thread, different case number.

24. This pattern — commanding silence, then punishing silence — was designed to erase Plaintiff's complaint history and prevent regulatory accountability.

**The Deflection Loop**

25. Whenever Plaintiff sought resolution, Cash App deflected him to Michael Lupolover, P.C. — the same attorney who filed the UCC-1, the President of Fundo LLC, and the person Cash App designated as the "creditor's attorney."

26. This created a closed circuit: the same person who created the lien, enforced it through Cash App, and controlled any "resolution." There was no independent review.

27. Venmo (a PayPal service) used the identical deflection strategy on May 18, 2026, directing Plaintiff to Jerry Lado at Legal@Fundo.com — proving the UCC Pipeline extends beyond Cash App.

**The Contempt of Settlement**

28. On July 9, 2026, Cash App entered into a $45 million multi-state attorney general settlement.

29. "On July 20, 2026 — eleven days later — Block Civil Process sent Plaintiff a cryptographically authenticated email re-asserting the UCC freeze against Plaintiff, again calling him 'secured party.' This email (DKIM/SPF/DMARC pass, X-SFDC-User 005Ke000001WSy3, EntityId 500Pn00001jOsoc, thread mg_0gv6pNk649NdBw_WumRc) is court-admissible proof of contempt."

**The Regulatory Failures**

30. Plaintiff has filed 9 CFPB complaints. Cash App marked each one "resolved" while the freeze continued. CFPB Complaint #260611-33987300 was closed on Cash App's false representations. CFPB Complaint #260723-35969125 documents the "Do Not Reply" Trap and remains open.

31. Plaintiff filed an Indiana Attorney General Complaint (#11837759, Matter #2026-0766817) on or about June 1, 2026. The Indiana AG forwarded it to the CFPB on June 26, 2026, without independent action.

32. Plaintiff served certified mail on Block, Inc. corporate headquarters on June 4, 2026. Cash App has possessed hard-copy legal notice of this dispute for over 60 days while generating automated, fraudulent case closures.

**The Harm**

33. The 4+ year freeze has caused catastrophic harm:

a. FINANCIAL: Lost business income of approximately $5,000 per month for 4.10 years ($245,749.49), destruction of business credit (Nav report: 0 active tradelines, F-grade), inability to access working capital.

b. EMOTIONAL: Severe depression, destroyed marriage, social ostracization, suicide attempt (Christmas 2023), permanent physical injuries from the suicide attempt (steel rod in tibia, broken ribs, mangled forearm), years of rehabilitation.

c. LEGAL: 321+ failed withdrawal attempts, 9 CFPB complaints, exclusion from $220 million in regulatory redress, 4+ years of fighting a $45.5 billion company alone.

**COUNT I: CONVERSION**

34. Plaintiff incorporates by reference all preceding paragraphs.

35. Conversion is the wrongful exercise of dominion and control over the personal property of another in denial of or inconsistent with the owner's rights.

36. Cash App has wrongfully exercised dominion and control over Plaintiff's $2,045.54 for 1,496+ days without legal authority, court order, or Plaintiff's consent.

37. Under Indiana law, conversion is a continuing tort. The statute of limitations resets daily. Cash App's ongoing refusal to release the funds constitutes a new conversion each day.

38. Cash App's conduct was willful, wanton, and in bad faith.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, and attorneys' fees.

**COUNT II: FRAUDULENT CONCEALMENT / FRAUD**

39. Plaintiff incorporates by reference all preceding paragraphs.

40. Cash App knowingly and intentionally concealed the true basis of the freeze, the UCC-1 filing, and Plaintiff's actual legal status as debtor.

41. Cash App made affirmative misrepresentations by calling Plaintiff "secured party" in 9 emails over 17 months, revising templates to embed the mislabel, and directing Plaintiff into deflection loops.

42. Cash App's concealment prevented Plaintiff from discovering his cause of action. Plaintiff did not know the full scope of the fraud until July 2026, when he obtained the authenticated email headers, discovered the template evolution, and documented the 5 distinct Salesforce users.

43. Under Indiana Code § 34-11-2-7, a cause of action for fraud is not deemed to have accrued until the discovery of the facts constituting the fraud. The fraudulent concealment doctrine tolls the statute of limitations until discovery.

44. Plaintiff has suffered damages including lost business income, credit destruction, emotional distress, and 4+ years of legal costs and opportunity costs.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, and attorneys' fees.

## COUNT III: VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT / REGULATION E

45. Plaintiff incorporates by reference all preceding paragraphs.

46. The Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., and Regulation E, 12 C.F.R. § 1005.1 et seq., govern the rights and responsibilities of consumers and financial institutions regarding electronic fund transfers.

47. Cash App is a "financial institution" under the EFTA because it provides electronic fund transfer services to consumers.

48. Cash App violated the EFTA and Regulation E by:

   a. Failing to provide required error resolution within 10 business days of receiving Plaintiff's oral or written notice of error (12 C.F.R. § 1005.11(c));

   b. Failing to investigate Plaintiff's disputes in good faith;

   c. Failing to provide written explanation of findings within 3 business days of completing investigation (12 C.F.R. § 1005.11(d));

   d. Wrongfully withholding $2,045.54 for 1,496+ days without a valid legal basis;

   e. Generating fraudulent case closures to avoid regulatory accountability.

49. Plaintiff provided oral and written notice of error on multiple occasions, including formal Reg E notice on or about June 16, 2026. Cash App ignored it.

50. Under 15 U.S.C. § 1693m, Plaintiff is entitled to actual damages, statutory damages of not less than $100 and not more than $1,000, punitive damages, and attorneys' fees.

WHEREFORE, Plaintiff demands judgment against Defendant for actual damages, statutory damages, punitive damages, and attorneys' fees.

## COUNT IV: UNFAIR, DECEPTIVE, OR ABUSIVE ACTS OR PRACTICES (UDAAP)

51. Plaintiff incorporates by reference all preceding paragraphs.

52. Cash App's conduct constitutes unfair, deceptive, and abusive acts and practices under federal and Indiana consumer protection law.

53. The "secured party" mislabeling was deceptive — it misled Plaintiff about his legal rights and misled regulators about his consumer status.

54. The "Do Not Reply" trap was abusive — it systematically destroyed Plaintiff's ability to seek redress.

55. The fraudulent case closures were unfair — they deprived Plaintiff of the error resolution process guaranteed by law.

56. Cash App's conduct caused substantial injury to Plaintiff that was not reasonably avoidable and not outweighed by any consumer benefit.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, and attorneys' fees.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57. Plaintiff incorporates by reference all preceding paragraphs.

58. Cash App's conduct was extreme and outrageous — deliberately freezing a consumer's funds for 4+ years based on a legally baseless lien, systematically concealing the fraud, mislabeling Plaintiff to exclude him from redress, and destroying his complaint history.

59. Cash App acted intentionally or with reckless disregard of the probability of causing severe emotional distress.

60. Plaintiff suffered severe emotional distress, including depression, anxiety, destroyed marriage, social ostracization, suicide attempt (Christmas 2023), and permanent physical injuries (steel rod in tibia, broken ribs, mangled forearm).

61. The fraudulent concealment doctrine and discovery rule toll the statute of limitations. Plaintiff did not discover — and could not have discovered through reasonable diligence — the full scope of the concealment scheme until July 2026, when he obtained the authenticated email headers, discovered the template evolution from “debtor” to “secured party,” and documented the five distinct Salesforce users enforcing the same mislabel. Cash App's affirmative acts of concealment — revising email templates, rotating ghost creditors, commanding “Do Not Reply,” and generating fraudulent case closures — prevented Plaintiff from knowing he had a cause of action for intentional infliction of emotional distress. Under Indiana law, a defendant cannot benefit from its own concealment. The statute of limitations did not begin to run until July 2026.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, and attorneys' fees.

## COUNT VI: POST-SETTLEMENT CONSUMER PROTECTION VIOLATION / UDAAP

62. Plaintiff incorporates by reference all preceding paragraphs.

63. On July 9, 2026, Cash App entered into a $45 million multi-state attorney general settlement resolving consumer protection claims. Plaintiff is an intended third-party beneficiary of that settlement.

64. On July 20, 2026 — eleven days later — Block Civil Process sent Plaintiff a cryptographically authenticated email re-asserting the identical UCC freeze against Plaintiff, again calling him “secured party,” in violation of the settlement's remedial purpose.

65. This post-settlement re-assertion constitutes a separate, willful, and wanton violation of consumer protection law, evidencing reckless disregard for the settlement and for Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, and injunctive relief prohibiting continued enforcement of the UCC-1 freeze.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Trevor Ray Vaughn respectfully requests that this Court enter judgment against Defendant Block, Inc. d/b/a Cash App as follows:

1. Order Defendant to immediately release the $2,045.54 in frozen funds, plus all accrued interest.

2. Award compensatory damages for lost business income, credit destruction, emotional distress, and all other actual damages.

3. Award statutory damages under the Electronic Fund Transfer Act, 15 U.S.C. § 1693m, in the amount of not less than $321,000 ($1,000 per violation for 321+ denied transactions), or the maximum amount allowable by law.

4. Award punitive damages for willful, wanton, and reckless conduct.

5. Award attorneys' fees and costs, including fees to be incurred upon retention of counsel, as provided by 15 U.S.C. § 1693m and applicable Indiana law.

6. Enter injunctive relief prohibiting Defendant from using UCC-1 financing statements to freeze personal consumer accounts without a valid court order.

7. Award such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: 07/28/2026

Respectfully submitted,

Trevor Ray Vaughn

Pro Se

3012 Kenwood Ave

Fort Wayne, Indiana 46805

380-289-6120

vtrevor13@gmail.com